1 | Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Ryan L. McBride, Esq. (SBN: 297557)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2633 E. Indian School Rd., Suite 460
Phoenix, AZ 85016
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE C. VEGA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEMPOE, LLC, a Delaware corporation,<br><br>Defendant. | Case No. 8:20-cv-02322<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF:**<br><br>1) KARNETTE RENTAL PURCHASE ACT, Cal. Civ. Code § 1812.620 *et seq.*;<br><br>2) CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, Cal. Civ. Code § 1750 *et seq.*; and<br><br>3) UNFAIR COMPETITION, Cal. Bus. & Prof. Code § 17200 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY ALLEGATIONS

1. This is a consumer class action against a national retail consumer lease-to-own company in the United States and the State of California, which preys on low-income Californians by charging exorbitant and unlawful prices to customers who sign up for long-term rentals of household appliances, furniture, or other consumer goods, or who purchase products that the customer had previously been renting. This action alleges that defendant violated the Karnette Rental-Purchase Act, Cal. Civ. Code § 1812.620 *et seq.*, the Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* This action seeks a public injunction and other equitable relief, including restitution, invalidation of rental-purchase agreements, an accounting, and a declaratory judgment that Defendant's conduct violated California law, as well as compensatory and punitive damages.

## THE PARTIES

2. At all relevant times, Plaintiff Danielle C. Vega ("Plaintiff" or "Vega") is an individual, residing in Orange County, California.

3. Plaintiff is informed and believes and thereon alleges that Defendant Tempoe, LLC ("Defendant" or "Tempoe") is an Ohio corporation that does business in the State of California.

## VENUE AND JURISDICTION

4. Venue is proper in this judicial district because Defendant is doing business in this district, is a registered entity with the Secretary of State, and a substantial part of the events or omissions giving rise to Vega's claims occurred in Orange County.

## BACKGROUND REGARDING LEASE-TO-OWN TRANSACTIONS

5. Tempoe is a national retail "lease-to-own" consumer rental company in the United States and maintains locations throughout the State of California. Lease-to-own companies offer consumers new and used merchandise—most

1  commonly appliances, electronics, or furniture—in exchange for a series of fixed
2  payments due either weekly, biweekly, or monthly. In a lease-to-own transaction,
3  the company is referred to as the "lessor," and the terms of the agreement are set
4  forth in a consumer lease agreement that effectively operates as a "rental-purchase
5  agreement." *See* Cal. Civ. Code § 1812.622(c), (d). (Unless otherwise indicated,
6  statutory citations herein are to the California Civil Code.)

7  6. A typical rental-purchase agreement sets a specific time period after
8  which, if all payments have been made, the consumer will own the merchandise.
9  These payments, in the aggregate, are referred to as the "Total of Payments." *See*
10 Section 1812.622(l).

11 7. A typical rental-purchase agreement also sets a predetermined "Cash
12 Price" at which the consumer has the option to purchase the item outright. See
13 Section 1812.622(e). Ordinarily, if a consumer chooses to exercise the purchase
14 option during a set initial period (*e.g.*, within 90 days after inception), the purchase
15 price is the Cash Price minus all prior rental payments. If a consumer chooses to
16 exercise the purchase option after the initial period has expired, the consumer is
17 usually given only partial credit for prior rental payments. The vast majority of
18 rent-to-own customers make weekly, biweekly, or month payments rather than
19 paying the Cash Price.

20 8. California law imposes strict limits on the amount that a rent-to-own
21 company can charge for a particular item of merchandise, whether as the Cash Price
22 or as the Total of Payments, as further discussed below.

23 9. The customer base for the rent-to-own industry is among the poorest
24 segment of the American population, consisting primarily of low-income and
25 financially-distressed consumers, a disproportionate number of whom are
26 minorities, who often cannot afford to purchase household goods outright at retail

prices.[1] Rent-to-own transactions offer immediate access to merchandise for what appears to be a low periodic payment; but in fact, such transactions can end up being extremely costly. The FTC Survey cited studies showing that the total cost of purchasing through a rent-to-own transaction is usually two or three times the retail price of comparable goods, and sometimes more. Approximately 70% of rented merchandise is eventually purchased by the customer after making all payments necessary to acquire ownership. *Id.* at 4. Rent-to-own dealers make very few "cash" sales. The Senate Judiciary Committee, on Apr. 4, 1994, responsible for the legislation of California's Karnette Rental-Purchase Act cites a survey of rent-to-own stores in 20 states, including California, which concluded that the average interest rate was 111%. A typical rent-to-own customer is someone "who cannot afford to purchase an item and does not have the credit to finance it." *Id.*

## THE KARNETTE RENTAL-PURCHASE ACT

10. Because of the foregoing concerns, California enacted the Karnette Rental-Purchase Act (the "Karnette Act") in 1994. Among other things, the Karnette Act regulates the maximum Cash Price and the maximum Total of Payments that can be charged for any particular item of merchandise.

11. The Legislature has declared the following in the Statement of Purpose of the Karnette Act, Civil Code § 1812.621:

> The Legislature hereby finds and declares that consumers enter into rental-purchase contracts that do not adequately disclose the actual terms and cost of the transaction or the consumer's liability for certain

---

[1] *See* Testimony of Margot Saunders, Before a Hearing of the U.S. House of Representatives Financial Services Committee, 26 July 2011, entitled "Examining Rental Purchase Agreements and the Potential Role for Federal Regulation" available at http://financialservices.house.gov/calendar/eventsingle.aspx?EventID=252659 (last accessed March 8, 2017). According to the Federal Trade Commission's Survey of Rent-to-Own Customers ("FTC Survey") published in April 2000 (relevant portions of which are attached hereto as Exhibit 1), 59% of rent-to-own customers had a household income of less than $25,000, and 41% were members of a minority community.

CLASS ACTION COMPLAINT　　　　　　　　　　　　　　　　　　　　　*Vega v. Tempoe, LLC*

breaches of the contract, and that contain unfair provisions, including unfair terms related to fees and charges, the exercise or the termination of purchase option rights, property loss and damage, and the repair or replacement of improperly functioning rental property.

It is, therefore, the intent of the Legislature in enacting this title to ensure that consumers are protected from misrepresentations and unfair dealings by ensuring that consumers are adequately informed of all relevant terms, including the cash price, periodic payments, total purchase price, and other applicable charges or fees, before they enter into rental-purchase contracts.

It is further the intent of the Legislature to (a) prohibit unfair or unconscionable conduct toward consumers in connection with rental-purchase transactions, (b) prohibit unfair contract terms, including unreasonable charges, (c) prevent the forfeiture of contract rights by consumers, (d) provide a right of reinstatement and a reasonable formula for the exercise of purchase option rights under a rental-purchase contract, (e) provide reasonable requirements for the servicing, repair, and replacement of improperly functioning rental property, and (f) cover rental-purchase transactions under existing laws, including laws governing debt collection, cosigners, home solicitation contracts, and warranties. This title shall be liberally construed to achieve its remedial objectives.

12. The Karnette Act defines "Cash Price" as "the price of the personal property described in the rental-purchase agreement that the consumer may pay in cash to the lessor at the inception of the rental-purchase agreement to acquire ownership of that personal property." Section 1812.622(e).

13. The Karnette Act defines "Total of Payments" as the "total amount of periodic payments necessary to acquire ownership of the property that is the subject of the rental-purchase agreement if the consumer makes all regularly scheduled payments." Section 1812.622(l).

14. Under the Karnette Act, if a lessor willfully discloses a Cash Price or a Total of Payments that exceeds the amount permitted under the Act, "the rental-purchase agreement is void, the consumer shall retain the property without any obligation, and the lessor shall refund to the consumer all amounts paid." See Section 1812.644(g).

15. The maximum Cash Price and the maximum Total of Payments that can be charged under the Karnette Act for a given item of merchandise depend primarily on the "lessor's cost," and secondarily on whether the item has been the subject of a prior rental-purchase agreement (i.e., whether the item is new or used).

16. The Karnette Act defines "lessor's cost" as "the documented actual cost, including actual freight charges, of the rental property to the lessor from a wholesaler, distributor, supplier, or manufacturer and net of any discounts, rebates, and incentives" (hereinafter, "Lessor's Cost"). *See* Section 1812.622(k).

17. For an item's first rental, Section 1812.644(b) establishes the maximum Cash Price as follows.

- For "computer systems and appliances," 1.65 times the Lessor's Cost.
- For "electronic sets," 1.7 times the Lessor's Cost.
- For " automotive accessories, furniture, jewelry, and musical instruments," 1.9 times the Lessor's Cost.
- For "all other items," 1.65 times the Lessor's Cost.

18. With respect to an item's first rental, the maximum Total of Payments may not exceed 2.25 times the maximum Cash Price that could have been charged for the first rental of that item, as determined by Section 1812.644(b). See Section 1812.644(c). For example, the maximum Total of Payments for the first rental of a laptop computer (whose maximum Cash Price is 1.65 times the Lessor's Cost) is 2.25 x 1.65 (or 3.1725) times the Lessor's Cost.

19. With respect to a second or subsequent rental (*i.e.*, used merchandise), the maximum Total of Payments is computed as follows: The maximum Total of

Payments permitted for a first rental of the item (as determined by Section 1812.644(c)) minus (i) for appliances and electronic sets, one-third of the amount of all rental payments paid to the lessor by consumers who previously rented that item, or (ii) for furniture, computer systems, and all other items, one-half of the amount of all rental payments paid to the lessor by consumers who previously rented that item. *See* Section 1812.644(d).

20. With respect to a second or subsequent rental, the maximum Cash Price is computed as follows: The maximum Total of Payments permitted for the item (as determined by Section 1812.644(d)) divided by 2.25. *See* Section 1812.644(e).

## VEGA'S TRANSACTIONS WITH TEMPOE

21. On or about January 4, 2020, Vega entered into a Consumer Lease Agreement ("Lease Agreement") with Tempoe for the purchase of General Electric Kenmore Electric Washer and Dryer, which each constitute an "appliance" within the meaning of Section 812.622(h). A copy of the Lease Agreement, is attached hereto as Exhibit 1 and is incorporated herein by reference. As stated in the Lease Agreement, Tempoe listed a Price for each item of $539.99, a Total Cash Price of $1,079.78, and the Total Payments of $1,047.32.

22. Plaintiff is informed and believes and thereon alleges that the Cash Price and/or the Total of Payments listed in the Lease Agreement exceed the maximum amounts permitted by the Karnette Act, and that Defendant set and disclosed an improper Cash Price and/or an improper Total of Payments in the Lease Agreement intentionally and willfully.

23. Plaintiff is informed and believes and thereon alleges that Tempoe acquires the merchandise that it rents and sells to its customers at less than the retail price.

24. As discussed above, the Karnette Act sets a maximum Cash Price for a new appliance of 1.65 times the Lessor's Cost. On information and belief, the Cash

Price listed in the Lease Agreement exceeds that amount.

25. As discussed above, the Karnette Act sets a maximum Total of Payments for a new appliance of 2.25 times the maximum Cash Price that could have been charged. On information and belief, the Total of Payments listed in the Lease Agreement exceeds that amount.

26. Upon information and believe, Tempoe bought the merchandise at wholesale discounted prices.

**DEFENDANT'S UNLAWFUL PRICING THROUGHOUT CALIFORNIA**

27. Plaintiff is informed and believe and thereon alleges that in the course of Defendant's business activities throughout the State of California, Defendant routinely lists Cash Prices and/or Total of Payments that exceed the maximum amount allowable under the Karnette Act. Although Plaintiff does not currently have access to Defendant's internal documentation showing the actual wholesale price paid for merchandise (all of which information is in the exclusive possession and control of Tempoe and/or its vendors and should be readily available through discovery), a sample of merchandise offered by Tempoe locations in the State of California demonstrates that Defendant violates the Cash Price and Total of Payments limitations of the Karnette Act with respect to items in addition to the specific merchandise that Plaintiff rented.

28. Plaintiff is informed and believes and thereon alleges that Defendant engages in such unlawful pricing activity willfully and intentionally. Plaintiff is informed and believes and thereon alleges that Defendant's illegal business activities and violations of California law are continuing to occur throughout the State of California, that such violations directly affect, and will continue to affect, Plaintiff, Class members, and members of the public of the State of California, and that such violations caused and continue to cause such individuals actual economic harm.

7
CLASS ACTION COMPLAINT                                          *Vega v. Tempoe, LLC*

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this lawsuit as a class action under Fed. R. Civ. P. 23. Plaintiff seeks to represent the following Class: "All individuals who, at any time on or after January 1, 2016, entered into a lease-to-own transaction with Defendant in the State of California. Excluded from the class are all employees of Defendant, all employees of Plaintiff's counsel, and the judicial officers to whom this action is assigned." Plaintiff reserves the right to modify this class definition.

30. <u>Ascertainability</u>. The members of the Class may be ascertained from Defendant's business records.

31. <u>Common Questions of Fact or Law</u>. This lawsuit is suitable for class treatment because common questions of fact and law predominate over any individual issues. Common questions include but are not limited to: (1) whether Defendant's rental-purchase agreements with Plaintiff and the Class members state a Cash Price and/or a Total of Payments that exceeds the maximum amounts permitted by the Karnette Act, and, if so, whether Defendant set or disclosed those prices intentionally or willfully; (2) whether Defendant's rental-purchase agreements violate the Karnette Act in other respects; (3) whether Defendant's conduct violates the California Consumers Legal Remedies Act; (4) whether the subject transactions constituted loans or forbearances under California law and, if so, whether such loans or forbearances are in violation of California's usury law; (5) whether Defendant's conduct constitutes an unlawful, unfair, or fraudulent business act or practice; and (6) the appropriate remedies for Defendant's conduct.

32. <u>Numerosity</u>. Plaintiff alleges on information and belief that the Class consists of well over 100 members.

33. <u>Typicality and Adequacy</u>. Plaintiff's claims are typical of the claims of all other Class members. Plaintiff will fairly and adequately protect the interests of the other Class members and have no interests that are adverse to the Class members.

8

CLASS ACTION COMPLAINT                                                    *Vega v. Tempoe, LLC*

34. <u>Superiority</u>. A class action is superior to other methods for resolving this controversy. Because the amount of damages to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for members of the Class to redress the wrongs done to them without a class action. Class certification will not present any significant management difficulties. Plaintiff is informed and believes and thereon alleges that records showing the Lessor's Cost, the Cash Price, and the Total of Payments for each item of personal property rented or sold by Tempoe are in the possession or control of Tempoe and are readily available through discovery. By statute, Tempoe is obligated to maintain a copy of each rental-purchase agreement, together with records that establish the Lessor's Cost for each and every item of personal property that is the subject of a rental-purchase agreement. Section 1812.644(a). Tempoe is required to maintain those records for at least two years after termination of a rental-purchase agreement. Id. Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

35. <u>Risk of Inconsistent or Varying Adjudications</u>. Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. As a practical matter, adjudication with respect to individual Class members would be also dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

36. <u>Conduct on Grounds that Apply Generally to the Class</u>. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

# FIRST CLAIM FOR RELIEF

## (VIOLATION OF THE KARNETTE RENTAL-PURCHASE ACT)

37. Plaintiff incorporates by reference the preceding paragraphs.

38. Plaintiff is informed and believes and thereon alleges that, throughout the Class Period, Plaintiff and Class members entered into rental-purchase agreements with Tempoe in the State of California, with respect to which:

   a. Defendant stated a Cash Price in excess of the maximum Cash Price permitted by Section 1812.644(b) or (e), in violation of Section 1812.624(a)(17).

   b. Defendant stated a Total of Payments in excess of the maximum Total of Payments permitted by Section 1812.644(c) or (d), in violation of Section 1812.624(a)(18).

   c. Defendant engaged in unfair, unlawful, and/or deceptive conduct, and/or made untrue and misleading statements, including but not limited to stating Cash Prices and/or Total of Payments that exceeded the maximum amount allowed by the Karnette Act, in violation Section 1812.639.

   d. Defendant failed to set forth in a single document all agreements between Defendant and each consumer with respect to the rights and obligations of each party, in violation of Section 1812.623(a).

   e. Defendant failed to provide to consumers at the time of signing a copy of the fully completed rental-purchase agreement and all other documents that the lessor requested the consumer to sign, in violation of Section 1812.629.

39. Defendant's acts as alleged herein were and continue to be willful, intentional, malicious, oppressive, and conducted in conscious disregard of the rights of Plaintiff and the Class members.

40. Unless enjoined and restrained by a court of law, Defendant will continue to commit the violations alleged herein with respect to Plaintiff, Class

members, and other members of the general public of the State of California.

41. As a result of the foregoing violations, Plaintiff seeks relief against Defendant, including, without limitation:

a. A public injunction (i) enjoining Defendant from committing future violations of the Karnette Act in the State of California, (ii) requiring Defendant to provide an accounting of all monies obtained from California consumers pursuant to rental-purchase agreements entered into in violation of the Karnette Act in the State of California during the applicable limitations period, (iii) requiring Defendant to give individualized notice to all consumers who entered into such contracts with Defendant in the State of California during the applicable limitations period of those customers' rights under the Karnette Act and applicable California law (including their right to restitution of all monies paid to Defendant and to keep the property at issue without further obligation), (iv) requiring Defendant to provide individualized notice to each such customer of the procedures available for enforcing the customer's rights under the Karnette Act, and (v) establishing an effective monitoring mechanism to ensure Defendant's continued compliance with the terms of the injunction.

b. A judicial declaration that the rental-purchase agreements entered into by Plaintiff and Class members are voidable at the consumers' option, pursuant to Section 1812.624(b).

c. A judicial declaration that the rental-purchase agreements entered into by Plaintiff and Class members are void, that the consumers are entitled to retain the property obtained pursuant to such agreements without any obligation, and an order that Defendant shall refund to Plaintiff and the Class members all amounts paid, pursuant to Section 1812.644(g).

d. An award to Plaintiff and Class members of actual damages, pursuant to Section 1812.636(a)(1).

11
CLASS ACTION COMPLAINT                                              Vega v. Tempoe, LLC

e. With respect to each violation of the Karnette Act by Defendant, a monetary award to Plaintiff and Class members in the amount of 25 percent of an amount equal to the total amount of payments required to obtain ownership of the property if all payments were made under the rental-purchase agreement, but not less than $100 or more than $1,000, pursuant to Section 1812.636(a)(2).

f. An award of attorney's fees and costs, pursuant to Section 1812.636(a)(3).

g. An award of exemplary damages in favor of Plaintiff and Class members, in an amount the court deems proper, pursuant to Section 1812.636(a)(5).

## SECOND CLAIM FOR RELIEF

**(VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT)**

42. Plaintiff incorporates by reference above paragraphs as if set forth herein.

43. Plaintiff and the Class members are "consumers" within the meaning of Section 1761(d) insofar as Plaintiff and the Class members sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

44. Defendant's products, merchandise, and services are "goods" and/or "services" within the meaning of Section 1761(a) and (b).

45. The transactions set forth in Plaintiff's and Class members' rental-purchase agreements are "transactions" within the meaning of Section 1761(e).

46. Defendant has violated and continue to violate Section 1770(a)(14) by representing that the rental-purchase agreement transactions with Plaintiff and Class members involve rights or obligations that those transaction do not create or establish, and have violated Section 1770(a)(19) by inserting unconscionable provisions into such contracts.

47. Defendant's conduct alleged herein was and is continuing to be undertaken by Defendant with oppression, fraud, and/or malice, within the meaning of Section 3294(c).

48. Unless enjoined and restrained by a court of law, Defendant will continue to commit the violations alleged herein with respect to Plaintiff, Class members, and other members of the general public of the State of California. Plaintiff seeks a public injunction (i) enjoining Defendant from committing future violations of the Karnette Act and the Consumers Legal Remedies Act in the State of California, (ii) requiring Defendant to provide an accounting of all monies obtained from California consumers pursuant to rental-purchase agreements entered into in violation of the Karnette Act or the Consumers Legal Remedies Act in the State of California during the applicable limitations period, (iii) requiring Defendant to give individualized notice to all consumers who entered into such contracts with Defendant in the State of California during the applicable limitations period of those customers' rights under the Karnette Act, the Consumers Legal Remedies Act, and applicable California law (including their right to restitution of all monies paid to Defendant and to keep the property at issue without further obligation), (iv) requiring Defendant to provide individualized notice to each such customer of the procedures available for enforcing the customer's rights under the Karnette Act and the Consumers Legal Remedies Act, and (v) establishing an effective monitoring mechanism to ensure Defendant's continued compliance with the terms of the injunction.

49. On behalf of themselves and Class members, Plaintiff seeks an appropriate injunction, statutory damages, restitution, compensatory and punitive damages, attorneys' fees, costs, an accounting, and any other relief the Court deems proper as a result of Defendant's violations of the Consumers Legal Remedies Act.

## THIRD CLAIM FOR RELIEF
### (UNFAIR COMPETITION)

50. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

51. By violating the Karnette Act as alleged above, by violating the

Consumers Legal Remedies Act as alleged above, Defendant has engaged, are engaging, and are likely to continuing engaging in, in business practices that are unlawful, unfair, and/or fraudulent, in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.

52. Defendant's business practices described herein have no social utility since they serve only to increase the profit accruing to Defendant without providing any corresponding benefit to California consumers. Plaintiff, Class members, and other members of the public of the State of California cannot reasonably avoid the injuries, economic and otherwise, directly caused by Defendant's unlawful conduct as alleged herein. There are reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

53. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff is entitled to (i) an order on behalf of the general public of the State of California enjoining Defendant from committing violations of the Unfair Competition Law, the Karnette Act, the Consumers Legal Remedies Act, and/or from making illegal loans or forbearances to consumers in the State of California; (ii) an order requiring Defendant to make full restitution to Plaintiff and Class members; (iii) an order requiring Defendant to provide an accounting of all monies obtained from California consumers pursuant to rental-purchase agreements entered into in violation of the Unfair Competition Law, the Karnette Act, the Consumers Legal Remedies Act, and/or California usury law in the State of California during the applicable limitations period, (iv) requiring Defendant to give individualized notice to all consumers who entered into such contracts with Defendant in the State of California during the applicable limitations period of those customers' rights under all applicable laws (including their right to restitution of all monies paid to Defendant and to keep the property at issue without further obligation), (v) requiring Defendant to provide individualized notice to each such customer of the procedures available for enforcing the customer's rights under all applicable

California laws, and (vi) establishing an effective monitoring mechanism to ensure Defendant's continued compliance with the terms of the injunction.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. For a public injunction on behalf of the People of the State of California as alleged;

2. For a judicial declaration that the rental-purchase agreements at issue are void or voidable at the option of the consumer, that the consumer shall retain the property obtained through such agreements without any obligation, and an order directing Defendant to refund to Plaintiff and Class members all amounts paid, pursuant to Section 1812.644(g);

3. For compensatory damages according to proof, pursuant to Section 1812.636(a)(1);

4. With respect to each violation of the Karnette Act, a monetary award to Plaintiff and Class members in the amount of 25 percent of an amount equal to the total amount of payments required to obtain ownership of the property if all payments were made under the rental-purchase agreement, but not less than $100 or more than $1,000, pursuant to Section 1812.636(a)(2);

5. For an award of attorney's fees and costs, pursuant to Section 1812.636(a)(3);

6. For an award of exemplary damages in an amount the court deems proper, pursuant to Section 1812.636(a)(4);

7. For declaratory relief, injunctive relief, and restitution, pursuant to Section 1812.636(a)(5).

On the Second Claim for Relief:

8. For a public injunction on behalf of the People of the State of California as alleged;

9. For an award of monetary damages and restitution for Plaintiff and Class members;

10. For an award of attorneys' fees and costs, pursuant to Section 1780(e).

On the Third Claim for Relief:

11. For a public injunction on behalf of the People of the State of California as alleged herein;

12. For restitution in favor of Plaintiff and Class members.

On All Claims for Relief:

13. For injunctive relief on terms the Court deems just and proper;

14. For reasonable attorneys' fees, pursuant to Cal. Code Civ. Proc. § 1021.5;

15. For costs of suit;

16. For pre-judgment interest; and

17. For such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and claims for relief so triable.

KAZEROUNI LAW GROUP, APC

Date: December 9, 2020 By: *s/ Ryan L. McBride*
Ryan L. McBride, Esq.
*Attorneys for Plaintiff*

**Additional Counsel for Plaintiff**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Ste 780
Woodland Hills, CA 91367
Tel: 877-206-4741
Fax: 866-633-0228